IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KACHELLE MCCORMICK, | |
| Plaintiff, | |
| v. | Civil Action File |
| | No. _____ |
| MIDTOWN INTERNATIONAL SCHOOL, INC., | |
| Defendant. | |

## **COMPLAINT**

Plaintiff Kachelle McCormick files this complaint against her former employer, Defendant Midtown International School, Inc. ("MIS" or "Defendant"), as a result of Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), showing as follows:

### *Parties, Jurisdiction, Venue, and Exhaustion of Administrative Remedies*

1.

Plaintiff Kachelle McCormick is a woman who resides and is domiciled in the State of Georgia. She may be contacted through undersigned counsel. From

2018 until November 18, 2020, she was an "employee" of MIS for purposes of Title VII.

2.

Defendant MIS is a Georgia corporation with its principal office located at 1575 Sheridan Rd. NE, Atlanta, DeKalb County, Georgia, 30324. MIS operates a school for gifted students in kindergarten through twelfth grade. It is subject to personal jurisdiction in this Court and may be served with process through its CEO, Lindsey Hicks, at MIS's principal office address above.

3.

MIS is an "employer" as that term is defined in Title VII because it is engaged in an industry affecting commerce and had more than fifteen employees for each working day in more than twenty calendar weeks at all times relevant to this action (including calendar years 2016 through 2021).

4.

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under federal law, as well as supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

5.

Venue is appropriate in this Court under 28 U.S.C. § 1391, as this is the judicial district and division in which MIS is deemed to reside and in which the events giving rise to Plaintiff's claims occurred.

6.

Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on Sunday, May 16, 2021, which was within 180 days after her unlawful termination.

7.

This action is timely filed within 90 days after Plaintiff's receipt, on November 23, 2021, of the Notice of Right to Sue from the EEOC.

8.

Plaintiff has exhausted all administrative remedies associated with her claims against MIS.

### Facts Giving Rise to Plaintiff's Claims Against MIS

9.

Kachelle McCormick was employed by MIS as an elementary school counselor from July 16, 2018 until she was terminated on November 18, 2020.

10.

As a school counselor, Ms. McCormick worked with students, their families, and other MIS faculty to provide counseling, support, and guidance to students dealing with academic, personal, social, and family concerns.

11.

Throughout her employment at MIS, Ms. McCormick successfully performed her job duties, met or exceeded all expectations that were communicated to her, and was passionate about her job. Ms. McCormick was never placed on (nor even threatened with) a performance improvement plan, nor was she otherwise made aware of any performance problems, prior to her termination. She was a beloved member of the MIS community.

12.

From at least 2015 through at least November 2020, MIS also employed a man named Petr Valek as maintenance manager at the school.

13.

Numerous female employees of MIS, including Ms. McCormick, complained to MIS administrators that Mr. Valek was engaging in sexually harassing and threatening behavior in the workplace.

14.

For example, Mr. Valek was known to trap female employees in their classrooms or other confined spaces by physically positioning himself in a doorway to block their ingress or egress, while flirting with them and engaging in prolonged, unwelcome conversations with them. He did this to Ms. McCormick as well as other female employees of MIS.

15.

Mr. Valek also made unwelcome, offensive, and sexually charged comments about the physical appearance of Ms. McCormick and other female employees. For example, Mr. Valek once commented that Ms. McCormick's body looked good because she had recently lost weight, and on numerous occasions he remarked that she looked attractive or made comments about the outfits she wore.

16.

Mr. Valek frequently displayed outbursts of anger in the workplace and was known for having a short temper and being easily upset. In addition to cornering female employees to flirt with them, Mr. Valek would also corner them during these outbursts, screaming at them. He used express and implied threats of physical violence to coerce victims into doing what he wanted and deter them from reporting his behavior.

17.

Mr. Valek bragged about having killed multiple people with his bare hands in the past. On at least one occasion, after warning an MIS employee that he had killed before and was not afraid to kill again, Mr. Valek laughed and boasted that if that employee ever tried to report him, nobody would believe the report, even though it was true.

18.

In addition to threatening to inflict bodily harm on Ms. McCormick and other MIS employees, Mr. Valek threatened to and did use property damage as a means of threatening MIS employees. On one occasion, Mr. Valek broke Ms. McCormick's desk, rendering it unusable.

19.

Mr. Valek was also known to inappropriately touch female employees at MIS, including at least one elementary school employee who resigned because of his behavior and MIS's failure to address it.

20.

Mr. Valek's behavior caused Ms. McCormick and other MIS employees to fear for their physical safety.

21.

Mr. Valek's habit of cornering and trapping female employees at MIS caused the women to develop a system for rescuing each other. The trapped employee could send a coded message to others, and the recipients knew that the person sending the text needed assistance.

22.

MIS received complaints about Mr. Valek's behavior (including the conduct described above) before, during, and even after Ms. McCormick's employment at the school.

23.

At least two female employees of the school complained to MIS about Mr. Valek during the 2017-2018 school year. One complained that Mr. Valek had threatened to run her over in the parking lot. The other complained about a series of lewd comments and inappropriate touchings by Mr. Valek.

24.

In 2018, Ms. McCormick was interviewed by MIS as part of what she was told was an internal investigation into the complaints about Mr. Valek.

25.

Ms. McCormick confirmed the complainant's allegations of flirtatious, inappropriate, and sexually harassing behavior by Mr. Valek.

26.

To the best of Charging Party's knowledge, MIS ordered Mr. Valek to undergo training intended to prevent sexual harassment in the workplace. This was intended to placate the complaining employees, not to remedy Mr. Valek's ongoing behavior problems. It is unknown whether Mr. Valek in fact completed said training, but if he did, the training had no effect on his harassing behavior, which persisted and even escalated.

27.

Between 2019 and 2020, Ms. McCormick complained about Mr. Valek to MIS administration (including to the head of school, Lindsey Hicks) on numerous occasions. She complained that Mr. Valek was sexually harassing her and other female employees and that she feared for her safety as a result of his behavior.

28.

On or about October 22, 2020, for example, Ms. McCormick reported that Mr. Valek had followed her as she went to the restroom, attempted to enter the single-occupancy bathroom knowing she was inside (unsuccessfully, as Ms.

McCormick had locked the door), and then waited outside the bathroom until Ms. McCormick emerged, at which point he raise his voice at her and yelled at her about using the hand-dryer in the bathroom.

29.

By way of another example, on or about November 6, 2020, Ms. McCormick submitted a written complaint to MIS administrators about Mr. Valek, detailing his inappropriate and unlawful behavior over the prior two years, and asking the school to take action.

30.

MIS did not take action against Mr. Valek in response to Ms. McCormick's complaints. Instead, Ms. Hicks told Ms. McCormick to simply avoid Mr. Valek.

31.

MIS had no genuine interest in addressing or remedying Mr. Valek's inappropriate behavior even after it was reported to the school administrators and supposedly investigated. For reasons unbeknownst to Plaintiff at this time, MIS administration was content to let the harassment, threats, and groping continue unabated and seemed to prioritize Mr. Valek's interests over the interests of the many women who complained about him.

32.

On November 18, 2020, fewer than two weeks after her most recent complaint against Mr. Valek, Ms. McCormick was told that she was being terminated for "breach of loyalty and candor" and that her only options were to resign or be fired.

33.

The separation notice that Ms. McCormick was provided by MIS read that she was terminated "for cause," that she was an "at-will employee," and that she was "terminated for breach of loyalty and candor."

34.

Ms. McCormick had not committed any breach of loyalty or candor, and MIS knew it. That was a pretextual excuse relied upon by MIS as a basis for terminating her employment.

35.

In reality, MIS terminated Ms. McCormick's employment in retaliation for her complaints that Mr. Valek was sexually harassing her and other women and that MIS was not meaningfully addressing the problem despite being aware of it.

36.

To ensure that Ms. McCormick's termination was carried out in the most insulting and humiliating way possible, MIS threatened to charge Ms. McCormick with trespassing if she were to return to campus and advised her that security had been notified. MIS knew that Ms. McCormick posed no security threat to the school, its faculty, or its students.

37.

At the time of Ms. McCormick's termination, her five-year-old son, J.G., was enrolled in kindergarten at MIS. At 8:26 p.m. on Wednesday, November 18, 2020 (the day of Ms. McCormick's termination), after undersigned counsel notified MIS's counsel that Ms. McCormick was pursuing a wrongful termination claim, MIS's counsel sent an e-mail advising that "effective immediately [Ms. McCormick's] son, [J.G.], is no longer enrolled as a student at MIS." Nothing had been said to Ms. McCormick at the time of her termination about unenrolling J.G. from MIS. Had MIS determined in good faith that it was necessary for J.G. to unenroll from the school, it could have allowed him to finish the semester (there was less than one month left), or at least the week (Thanksgiving break began the following Monday, November 23). But MIS's decision to unenroll J.G. immediately was not made in good faith.

38.

J.G. did not attend MIS free of charge as a benefit of Ms. McCormick's employment. Ms. McCormick paid tuition for J.G.'s enrollment there, and MIS had accepted financial aid for J.G. that was intended to cover the entire 2020-2021 school year.

39.

When undersigned counsel requested that J.G. be permitted to finish the school year at MIS, MIS advised that it would allow J.G. to re-enroll only if Ms. McCormick (among other things) signed a full waiver and release of all claims relating to her employment and her termination. MIS knew at the time it made this demand that Ms. McCormick had retained counsel to represent her in a wrongful-termination claim.

40.

MIS's decision to expel J.G. from the school was a retaliatory action designed and intended to inflict as much harm, trauma, and humiliation as possible on Ms. McCormick and her family, and also to manufacture leverage MIS believed would encourage Ms. McCormick to release the claims she intended to pursue against MIS.

*Count I: Retaliation in Violation of Title VII*

41.

Plaintiff incorporates the preceding paragraphs as if fully restated herein.

42.

Kachelle McCormick engaged in protected activity under Title VII while she was an employee of MIS.

43.

Ms. McCormick's protected activity included, without limitation, complaining to MIS's administration—on numerous occasions in 2018, 2019, and 2020, including at least October 22 and November 6, 2020—about Petr Valek's sexual harassment of her and other female employees at the school; participating in an internal investigation into complaints about Petr Valek; and notifying MIS that she intended to pursue a wrongful termination claim.

44.

Midtown International School intentionally and unlawfully retaliated against Kachelle McCormick for her protected activity.

45.

MIS's retaliation took the form of, among other things, the termination of Ms. McCormick's employment on November 18, 2020; the immediate mid-week

expulsion of her son J.G. from MIS's kindergarten class effective November 18, 2020; and the attempt, on November 30, 2020, to use J.G.'s potential re-enrollment at MIS as leverage to convince Ms. McCormick to release the claims MIS knew she intended to pursue and sign a non-disclosure agreement.

46.

None of the retaliatory conduct engaged in by MIS was motivated by a legitimate, non-retaliatory purpose relating to the operation of MIS's business. MIS was not genuinely concerned that Ms. McCormick had breached any duty of loyalty or candor. Such concerns were feigned and designed to serve as a pretext to disguise MIS's true, retaliatory motivations for the actions complained of in this Complaint.

47.

MIS's retaliatory behavior violated Title VII.

48.

MIS is liable to Ms. McCormick for the harm and damages she has suffered as a result of its retaliatory behavior, including lost wages, lost benefits, lost opportunities for advancement, harm to her reputation and career, humiliation, mental anguish and emotional distress, attorneys' fees, expenses of litigation, and other pecuniary and non-pecuniary harms.

- 14 -

49.

MIS's actions were taken in knowing or reckless disregard of Ms. McCormick's rights under federal law, entitling her to punitive damages.

*Count II: Intentional Infliction of Emotional Distress*

50.

Plaintiff incorporates the preceding paragraphs as if fully restated herein.

51.

MIS's conduct described in this Complaint, including its retaliatory termination of Ms. McCormick, its reliance on an artificial and pretextual reason to support that termination, its immediate unenrollment of an innocent five-year-old (J.G.), its threats to Ms. McCormick, and its general tone and tenor in dealing with Ms. McCormick on and after November 18, 2020, was extreme and outrageous.

52.

MIS's atrocious actions toward Ms. McCormick went beyond all reasonable bounds of decency and are utterly intolerable in a civilized society.

53.

In carrying out the acts described above, MIS acted intentionally and knowingly, with the malicious purpose of causing Ms. McCormick to suffer

emotional distress, humiliation, and mental anguish. At a minimum, MIS's conduct demonstrates a reckless disregard of Ms. McCormick's rights.

54.

Ms. McCormick did, in fact, experience severe and extreme emotional distress as a result of MIS's actions, particularly after MIS went out of its way to use Ms. McCormick's minor son as leverage against her.

55.

MIS is liable to Ms. McCormick for monetary and non-monetary harms she suffered as a result of its conduct in an amount to be proven at trial.

56.

MIS's actions were intentional, knowing, willful, and wanton, such that Ms. McCormick is entitled to recover punitive damages against MIS.

### *Jury Trial Demanded*

57.

Plaintiff demands a trial by jury for all issues so triable.

### *Prayer for Relief*

Plaintiff respectfully asks that this Court:

A.    Award Plaintiff damages in an amount reasonable and commensurate with the losses suffered by her as a result of MIS's unlawful conduct, including monetary and non-monetary losses;

B.    Award Plaintiff back pay and other lost benefits of employment in an amount to be proven at trial;

C.    Award Plaintiff front pay in an amount justified by the evidence at trial, as reinstatement is not feasible under the circumstances of this case;

D.    Award Plaintiff punitive damages in an amount sufficient to punish MIS for its conduct in this case and deter similar misconduct in the future;

E.    Award Plaintiff her costs and attorneys' fees;

F.    Award Plaintiff pre- and post-judgment interest at the maximum rates allowable; and

G.    Grant such further relief as the Court deems necessary, proper, or just.

Dated and filed this 16th day of February, 2022.

_____
Jennifer K. Coalson, Esq.
Georgia Bar No. 266989
Dustin L. Crawford, Esq.
Georgia Bar No. 758916
PARKS, CHESIN & WALBERT, P.C.
75 Fourteenth St., Suite 2600

- 17 -

Atlanta, Georgia 30309
(404) 873–8000
jcoalson@pcwlawfirm.com
dcrawford@pcwlawfirm.com

*Counsel for Plaintiff Kachelle McCormick*